UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

JESSICA SMITH                                                                                  Plaintiff

v.                                                                       Civil Action No. 4:21-cv-128-RGJ

RELIANCE STANDARD INSURANCE                                                                    Defendant
COMPANY

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

Plaintiff, Jessica Smith ("Smith"), moves for judgment on the record against Defendant, Reliance Standard Insurance Company ("Reliance Standard"). [DE 23]. Reliance Standard responded and Smith replied. [DE 27; DE 28]. In its response, Reliance Standard also moves for judgment on the record. [DE 27 at 928]. Accordingly, these motions are ripe for adjudication. For the reasons below, the Court **GRANTS** judgment in favor of Smith.

### I.     Background

Smith worked at Old National Bank as a "Retail Center Manager." [DE 23 at 593; DE 23-1 at 657, 801]. Her job required continuous written and verbal communications; continuous standing and walking; occasional sitting, balancing, crawling, etc.; and using both hands for computer operation and cash handling. [DE 23 at 593–94; DE 23-1 at 714]. Her job could not be performed by alternating sitting and standing. [DE 23 at 594; DE 23-1 at 714]. Smith had a long-term disability ("LTD") policy through Old National Bank—provided by Reliance Standard—which covered 60% of her Covered Monthly Earnings if she became Totally Disabled. [DE 23 at 594; DE 27 at 928]. To qualify for benefits, an employee had to submit "satisfactory proof of Total Disability[.]" [DE 27 at 928; DE 9-1 at 48].

On September 2, 2020, Smith stopped work, applying for medical leave. [DE 23 at 594; DE 9-3 at 232–33]. Old National Bank approved her leave. [DE 23 at 594; DE 9-3 at 233]. Dr. Dattatraya Prajapati ("Dr. Prajapati") provided certification of Smith's medical condition. [DE 23 at 594; DE 9-3 at 238–40]. When her condition did not improve, Smith applied for and received maximum short-term disability ("STD") benefits in November 2020. [DE 23 at 595; DE 9-2 at 132]. This request was supported by certification from Dr. Laila Agrawal ("Dr. Agrawal"), and another certification in December 2020 from Nurse Practitioner Dodie Kirkendoll ("Kirkendoll"). [DE 9-3 at 241–46].

Smith applied for LTD benefits in January 2021, while still receiving STD benefits. [DE 23 at 595; DE 9-3 at 225–29]. Kirkendoll again offered her medical opinion as part of this claim by completing a "Physician's Statement." [DE 23 at 596–97; DE 9-3 at 230–31]. As it processed Smith's LTD claim, Reliance Standard recommended that she pursue Social Security Disability Income ("SSDI"), offering the support of Allsup—a vendor that assists claimants on behalf of Reliance Standard—to represent her. [DE 23 at 596; DE 23-3 at 861–62; DE 9-1 at 100]. Smith continued to see her doctors while Reliance Standard processed her LTD claim, including an office visit to Dr. Agrawal in February 2021. [DE 23 at 596–97; DE 9-4 at 323–46].

Reliance Standard sought its own medical opinion to assess Smith's LTD claim from its in-house nurse, Alison House ("House"), who suggested obtaining more medical records and concluded "[Smith] is precluded from engaging in any sustained work function on a frequent and consistent basis[.]" [DE 27 at 932; DE 9-1 at 91]. With the documentation from Dr. Prajapati, Dr. Agrawal, Kirkendoll, and House, Reliance Standard approved Smith's LTD benefits, explaining that she met the group policy definition for "Total Disability," and again advising her to apply for SSDI benefits. [DE 23 at 597–98; DE 9-2 at 189–90]. After Katherine Gosselin made this initial

2

claim determination, Smith's LTD claim was reassigned to Steven Norden ("Norden"). [DE 27 at 932–33; DE 9-2 at 203]. In May 2021, Smith provided forms to Reliance Standard to pursue SSDI and her waiver of premium benefits ("LWOP") claim. [DE 23 at 599; DE 9-6 at 470–72].

When Reliance Standard sought more information from Smith on June 1, 2021, she complied by responding directly to Reliance Standard's inquiry, providing a medical release for her Norton Healthcare physicians, and signing an even broader release for Reliance Standard to obtain any medical information it needed. [DE 23 at 599–600; DE 9-2 at 164; DE 9-7 at 475, 484]. As Reliance Standard continued to seek information from Smith—requesting visit notes from Kirkendoll on July 14, 2021 and seeking updated information on Smith's activities and limitations on August 17, 2021—Smith timely provided the information. [DE 23 at 600–01; DE 9-2 at 168, 171].

On August 26, 2021, Reliance Standard held a Claims Discussion Meeting ("CDM") with Norden, another in-house nurse named Jane Sweeney ("Sweeney"), and other staff. [DE 23 at 601; DE 9-1 at 92]. The meeting did not include House, which Reliance Standard's claims manual recommended. [DE 23 at 602; DE 9-1 at 92; DE 23-2 at 809–10]. On August 26, 2021, Reliance Standard terminated Smith's LTD benefits. [DE 23 at 602; DE 9-3 at 215]. Reliance Standard never explicitly issued a decision on Smith's LWOP claim. [DE 23 at 604].

Believing she did not have to appeal the claim denial and exhaust her administrative remedies,[1] [DE 23 at 608], Smith initiated this lawsuit seeking (1) past due LTD benefits with interest, (2) ongoing LTD and life waiver of premium ("LWOP") benefits, and (3) attorneys' fees and costs. [DE 23 at 593]. On January 23, 2023, a Social Security Administrative Law Judge ("ALJ"), Stacey L. Foster, found Smith was severely impaired and could not perform past relevant

---

[1] Reliance Standard explicitly does not challenge this position. [DE 27 at 950].

work. [DE 23 at 604–05; DE 23-4 at 916–17]. While she did not qualify for SSDI, the ALJ found that she only had the residual functional capacity to perform sedentary work, with certain restrictions. [DE 23-4 at 913].

## II. Standard of Review

The Court reviews a denial of benefits by a plan administrator *de novo* "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). This applies both "to the factual determinations as well as to the legal conclusions of the plan administrator." *Id.* (citing *Rowan v. Unum Life Ins. Co.*, 119 F.3d 433, 435 (6th Cir. 1997)). In doing so, the Court is limited to reviewing only the record before the plan administrator at the time of their decision. *Id.* at 615 (citing *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990)). That means that, when conducting the *de novo* review of the decision, the Court "must take a 'fresh look' at the administrative record but may not consider new evidence or look beyond the record that was before the plan administrator." *Id.* at 616.

If, however, the administrator does have discretionary authority and exercises that authority, the Court must apply the arbitrary and capricious standard of review. *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014) (citing *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 456 (6th Cir. 2003)). That standard requires the Court to uphold the administrator's decision "if it is 'rational in light of the plan's provisions.'" *Id.* (quoting *Marks*, 342 F.3d at 457). Under arbitrary and capricious review, the Court is still limited to only the record before the plan administrator at the time of their decision. *Id.* (citing *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991)).

Smith and Reliance Standard dispute the standard of review that should apply, even though Reliance Standard ultimately purports to "stipulate" to *de novo* review to "streamline the Court's review process."[2] [DE 27 at 939]. Smith argues that the standard of review is *de novo* because (1) Reliance Standard's administrator failed to comply with ERISA claim regulations, (2) the administrator, Norden, was not a Reliance Standard employee vested with discretionary authority, and (3) even if he were, he did not actually exercise any discretionary authority. [DE 23 at 606–07]. Reliance Standard replies that the plan does give discretion to the administrator, and so the arbitrary and capricious standard is appropriate. [DE 27 at 938].

"While 'magic words' are unnecessary to vest discretion in the plan administrator and trigger the arbitrary and capricious standard of review, [the Sixth Circuit] has consistently required that a plan contain 'a *clear* grant of discretion [to the administrator] to determine benefits or interpret the plan.'" *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (citing *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994)) (emphasis in original). The relevant portion of the policy states:

> Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties. This provision applies only where the interpretation of this Policy is governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. 1001 et seq.

---

[2] Despite disputing Smith's arguments for *de novo* review, Reliance Standard states, "[t]o streamline the Court's review process, Reliance Standard will stipulate to *de novo* review of its claim decision." [DE 27 at 939]. While it is unclear why Reliance Standard would stipulate to a less favorable standard of review, the Court notes that it does not apply *de novo* review for this reason because "it is well established that parties may not stipulate to a standard of review." *Moore v. Mitchell*, 708 F.3d 760, 782 (6th Cir. 2013) (citation omitted); *see also Reg'l Airport Authority of Louisville v. LFG, LLC*, 460 F.3d 697, 712 n.10 (6th Cir. 2006) (citation omitted) ("Of course, the parties may not stipulate to the standard of review.").

5

[DE 9-1 at 44]. This language in the policy gives Reliance Standard "discretionary authority to interpret the Plan . . . to determine eligibility for benefits" as the "fiduciary." [*Id.*].

But Reliance Standard also must have actually exercised that discretionary authority. *See Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 367 (6th Cir. 2009) (holding that district court properly applied *de novo* review when defendant did not actually make the decision on claim for benefits); *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 597 (6th Cir. 2001) ("[D]eferential review under the 'arbitrary and capricious' standard is merited for decisions regarding benefits when they are made in compliance with plan procedures" but "this deferential review is not warranted" if the decision is made by "an unauthorized body that does not have fiduciary discretion[.]"); *Christoff v. Ohio N. Univ. Emple. Benefit Plan*, 2010 U.S. Dist. LEXIS 54733, at *5 (N.D. Ohio June 4, 2010) ("To deserve deference, however, the administrator must actually exercise his discretionary authority.") (citation omitted). Smith argues that the "person with final decision making authority on Ms. Smith's claim" was employed by a third-party called Matrix Absence Management, Inc. ("Matrix"), therefore Reliance Standard did not actually exercise the discretion vested in it by the contract. [DE 23 at 607; DE 23-3 at 824]. In support of this argument, Smith cites a case that dealt with this exact scenario and exactly the same Reliance Standard policy language. [DE 23 at 607 n. 74]. In that case, the Court held "[a]lthough defendant Matrix acted as [Reliance Standard's] claims administrator, the language of the policy reserved the final and binding decisions for [Reliance Standard] itself. Therefore, the court will apply the *de novo* standard of review to the decision to deny benefits." *Worthing v. Reliance Std. Life Ins. Co.*, 2009 U.S. Dist. LEXIS 36732, at *4–5 (E.D. Mich. May 1, 2009).

Reliance Standard responds to this argument by pointing out that the April 26, 2021 letter is written to Smith from Reliance Standard. [DE 27 at 938 n. 2]. Although that letter is on Reliance

6

Standard letterhead, it is signed by Norden, and it does not change the fact that Norden was employed by Matrix and exercised ultimate decision-making responsibility for the policy determination. [DE 9-3 at 215–19]. This alone is sufficient to show that Reliance Standard—although the policy clearly vested it with discretionary authority—did not actually exercise that discretionary authority itself. As a result, the Court must review the claims determination *de novo*. *See*, *e.g.*, *Davidson v. Liberty Mut. Ins. Co.*, 998 F. Supp. 1, 9 (D. Me. 1998) (applying *de novo* review where "[No portion] of the LTD plan . . . expressly permits delegation of the duties of the plan administrator" and "the Court cannot assume that the LTD plan permitted delegation of the duties of the plan administrator[.]"); *Belheimer v. Fed. Express Corp. Long Term Disability Plan*, 2012 U.S. Dist. LEXIS 168882, at *20 (D.S.C. Nov. 28, 2012) ("[A]s Federal Express delegated its final decision making authority to Aetna, and the LTD Plan did not contemplate or authorize such a delegation, this Court will review the decision to deny Plaintiff's long-term disability benefits claim *de novo*.").

### III. Medical Evidence

The parties have highlighted different aspects of Smith's medical record. After reviewing the record *de novo*, the Court finds the following facts were relevant and available to Reliance Standard when it terminated Smith's LTD benefits.

#### i. Dr. Sinicrope

Dr. Kaylyn Deanne Sinicrope ("Dr. Sinicrope") treated Smith because Smith experienced migraine headaches on a month-to-month basis. [DE 9-5 at 357]. Smith has experienced these migraines since she was 29 years old. [*Id.*]. Smith does not mention Dr. Sinicrope in her briefing, and she only mentions her migraines once in passing. [DE 23 at 601].

### ii. Dr. Prajapati

Dr. Prajapati's certification provided to Reliance Standard explained that Smith was "unable to perform any of [her] job functions," that she could not perform "lifting, pushing, pulling, [or] standing," that she had been diagnosed with "breast cancer, fibromyalgia, VAIN 1," and the "effects of Amidex [were] causing her to have more pain and weakness." [DE 23 at 594; DE 9-3 at 239–40]. At the time, Dr. Prajapati estimated Smith would be incapacitated for a six-month period from September 3, 2020 until March, 3 2021. [DE 9-3 at 239]. While Reliance Standard had Dr. Prajapati's certification document available when it made its determination, it did not have visit notes from Dr. Prajapati. [DE 27 at 946].

### iii. Dr. Agrawal

In a certification provided to Reliance Standard, Dr. Agrawal explained that the "probable duration" of Smith's condition was "lifetime." [DE 9-3 at 241]. Dr. Agrawal indicated that Smith was precluded from "standing long periods of time" and "using hands/shoulders due to joint pain" and "arthritic hands." [*Id.* at 242]. The certification form explains that Smith has been diagnosed with "State II A Breast Cancer" and "is having pain in her joints, knees, shoulders, hands, [and] pain through her left breast." [*Id.*]. Dr. Agrawal's assessment said that Smith was not incapacitated and did not anticipate Smith becoming incapacitated. [*Id.*]. The form explains that Smith does not believe she can return to work, but Dr. Agrawal's notes do not necessarily endorse that assessment. [*Id.* at 243]. Later, while the LTD claim was pending, Dr. Agrawal's visit notes for Smith showed that she had taken a two-week and then four-week break from medications due to bone pain, but the pain did not improve. [DE 9-4 at 330]. After starting Letrozole, she experienced "swelling in her hands" and "pain in her neck and shoulders, hands, left leg, and bilateral feet." [*Id.*]. Smith tried "walking or doing yoga daily" but felt that it "worsened her

pain." [*Id.*]. Dr. Agrawal's notes also showed an "ECOG Performance status" of "1," [*Id.* at 333], which is defined as "Restricted in physically strenuous activity but ambulatory and able to carry out work of a light or sedentary nature, e.g., light house work, office work." [DE 23 at 597 n. 22].

    **iv.    Nurse Practitioner Kirkendoll**

Kirkendoll provided a certification form, agreeing with Dr. Agrawal's assessment that the condition's "probable duration" was "lifetime." [DE 9-3 at 244]. Kirkendoll found that Smith could not perform "lifting, pushing, pulling, prolonged sitting, prolonged standing[], bending, [or] stooping." [*Id.* at 245]. She also noted diagnoses of "breast cancer, fibromyalgia, chemotherapy induced arthralgia, chronic pain syndrome, VAIN 1, [and] medication induced side effects." [DE 23 at 595; DE 9-3 at 245]. Kirkendoll estimated that the period of incapacity would be September 3, 2020 until January 1, 2022 "or longer," up to "lifetime." [DE 9-3 at 245]. Kirkendoll filled out a "physician's statement" for Smith's STD claim that listed primary diagnoses of breast cancer and cancer of upper limb lymph nodes, as well as chronic pain syndrome, polyneuropathy, and fibromyalgia. [DE 23 at 595–96; DE 9-3 at 230]. It listed limitations including that Smith could not repetitively perform simple grasping, pushing/pulling, or fine manipulation, as well as no bending, squatting, climbing, reaching above her shoulder, kneeling, crawling, or driving. [DE 9-3 at 231]. Kirkendoll estimated that it would take 16 months "or more" to achieve maximum medical improvement. [*Id.*].

Smith saw Kirkendoll twice more after Reliance Standard approved her LTD benefits. On April 21, 2021, Smith saw Kirkendoll again and the visit notes showed "Musculoskeletal: Positive for arthralgias and myalgias" and "Musculoskeletal: General: Tenderness present. Normal range of motion . . . Comments: tender to palpate cervical, upper thoracic, L/S spine.. [sic] point trigger point tenderness." [DE 9-8 at 520–22]. Kirkendolll saw Smith again on May 17, 2021, finding

she was experiencing "Shoulder pain on the right side. Neuropathy – mainly in bilateral hands[.]" [DE 9-7 at 496]. During this visit, her ECOG score remained at 1. [*Id.* at 499].

Smith's next appointment with Kirkendoll was rescheduled from June 2021 to September 2021, and Smith confirmed for Norden that he had all of her medical records up to date. [DE 23 at 600]. Smith then provided Norden with information on her daily activities that he requested, explaining:

> My current daily activities involve doing housework, as needed. I still cook dinner as much as possible for myself and my son. I try to walk outdoors a few minutes every day. I attend church services on Sunday and Wednesday. At this time, I do not require any additional assistance to complete household activities. However, I do have pain in my hands and wrists if I have to drive longer periods of time. An example would be my oncologist and breast specialists in Louisville, which is a 2 hour drive from me. I have to have someone drive me now. That is usually one of my children or my mother. My limitations are still lifting, grabbing, carrying, getting up and down frequently or being on my feet for more than 10-15 minutes at a time. I have arthritis pain in my neck, shoulders, wrists and knees. If I use a computer my hands and wrists hurt, and for any extended amount of time it can cause me to have a migraine.

[DE 9-2 at 171].

### v. Nurse House

Reliance Standard's in-house nurse, House, offered the following conclusion after reviewing "the data available as of this date" on April 13, 2021:

> Based on medical records reviewed, claimant is precluded from engaging in any sustained work function on a frequent and consistent basis from date of loss ongoing due to bilateral hands and feet neuropathy related to chemotherapy treatment for breast cancer. Claimant also has chronic pain syndrome, and fibromyalgia. Her anastrozole, was switched to Letrozole and gabapentin was added due to continued pain in joints, knees, shoulder, and hand. Claimant had neurology evaluation for headaches and as needed medications were added. She is to follow up with providers in 5/2021

[DE 9-1 at 91]. This was the last medical opinion given to Reliance Standard before it approved LTD benefits for Smith on April 16, 2021 upon the record discussed to this point, finding she met

the definition of "Total Disability" and again recommending that Smith apply for "SSD benefits." [DE 9-2 at 189–90].

### vi. Nurse Sweeney

Reliance Standard then held a CDM with all of the medical evidence discussed above available, after it had approved LTD benefits. Sweeney reviewed the record and offered her medical opinion, explaining:

> Updated records were reviewed for this 43 year old retail banking manager (light/sedentary) with DOL 9/30/2020 and a history of multifocal left breast cancer in 0217, s/p left lumpectomy and node dissection 6/2017, adjuvant chemotherapy completed 1/2018, bilateral mastectomies 2/2018, adjuvant radiation completed 5/2018 and bilateral oophorectomy 1/2019. Family Medicine records 4/21/2021 document claimant recently had cosmetic liposuction and reports continued arthralgias, myalgias, chemotherapy related neuropathy and fatigue, doing yoga. There are multiple tender points consistent with fibromyalgia, otherwise unremarkable exam. Oncology records 5/17/2021 indicate continued report of arthralgias and neuropathy, ongoing adjuvant treatment with Letrazole, using Gabapentin. There is no evidence of disease. Claimant is four years post cancer diagnosis with no evidence of recurrent or metastatic disease. There appears to be some mild residual neuropathy and generalized arthralgias (possibly related to hormone therapy), as well as diagnosis of fibromyalgia. However while there are multiple ongoing complaints, there is little in the way of objective findings to validate a level of symptoms that would preclude return to sedentary or light work function for this young individual at present and ongoing. The medical opinion provided is based on the data available as of this date.

[DE 9-1 at 92]. With this information in mind, Reliance Standard terminated Smith's LTD benefits effective September 2, 2021, notifying her in a letter dated August 26, 2021. [DE 9-3 at 215]. Reliance standard did not explicitly render a decision on Smith's LWOP claim. [DE 23 at 604].

## IV. Discussion

When applying a *de novo* standard of review, "[a]ny dispute over the precise terms of the plan is resolved by a court[.]" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). And in the ERISA context, "the role of the court reviewing a denial of benefits 'is to determine whether the administrator . . . made a correct decision,'" with "no deference or presumption of correctness"

11

afforded to the administrator's decision. *Hoover v. Provident Life & Acc. Ins. Co.*, 290 F.3d 801, 808–09 (6th Cir. 2002) (quoting *Perry*, 900 F.2d at 965–67). The question for the Court then is simply whether Smith "establish[ed] by a preponderance of the evidence" that she still met the definition of Total Disability under Reliance Standard's LTD policy for Class 1 employees. *Bruton v. Am. United Life Ins. Corp.*, 798 F. App'x 894, 901 (6th Cir. 2020); *see also Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Employees*, 741 F.3d 686, 700–01 (6th Cir. 2014).

### A. LTD Benefits Termination

Smith contends that she satisfied her burden of proof that she was "Totally Disabled." The policy defines that term as follows:

> CLASS 1: "Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness, during the Elimination Period and thereafter an Insured cannot perform the material duties of his/her Regular Occupation; (1) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her Regular Occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period; and (2) "Residual Disability'" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability.
>
> . . .
>
> "Regular Occupation" means the occupation the Insured is routinely performing when Total Disability begins. We will look at the lnsured's occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale.

[DE 23-1 at 627, 628; DE 9-1 at 40]. If a claimant qualified as "Totally Disabled," benefits could be terminated under these circumstances:

> The Monthly Benefit will stop on the earliest of: (1) the date the Insured ceases to be Totally Disabled; (2) the date the insured dies; (3) the Maximum Duration of Benefits, as shown on the Schedule of Benefits page, has ended; or (4) the date the Insured fails to furnish the required proof of Total Disability.

[DE 9-1 at 49]. Smith makes a number of arguments as to why Reliance Standard's determination was wrong, including that it (1) failed to show Smith's condition had changed from when it approved Smith's claim for LTD benefits; (2) ignored its representations to Smith about SSDI; (3) ignored Smith's medication side effects; (4) did not discuss Smith's actual job duties; (5) ignored Smith's physicians; (6) did not identify what information it needed from Smith; and (7) failed to make a decision on Smith's LWOP claim. [DE 23 at 609–12]. More generally, Smith asserts that the medical record does not support the termination of LTD benefits. [*Id.*].

Reliance Standard responds by arguing that the "physical examinations . . . reflect essentially normal findings" and contradict Smith's "self-reported complaints" to her physicians. [DE 27 at 929]. It also maintains that the healthcare certification forms provided as part of Smith's LTD application by Kirkendoll are "grossly exaggerated." [*Id.* at 930].

Turning first to Kirkendoll's documentation, Reliance Standard was not required to credit the opinion of any particular medical professional simply because they were the treating physician. [*Id.* at 943 (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) ("[W]e hold, courts have no warrant to require administrators to automatically accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."))]. The Court also agrees that some of Kirkendoll's opinions appear to be exaggerated. For instance, Kirkendoll indicated at one point that Smith was unable to sit, stand, walk, or drive *at all*. [DE 9-3 at 230–31]. She also indicated that Smith had a "Class 3 (marked limitation) due to a cardiac condition," which was an outlier opinion. [*Id.*]. No other medical records suggest a cardiac limitation of any kind.

13

The problem with Reliance Standard's argument that Kirkendoll's opinions were severely exaggerated is that they were part of the same record it used to approve Smith's LTD claim in April 2021. And the portions of the record created by Kirkendoll that were exaggerated—such as suggesting that Smith was limited by a cardiac condition and that she could not perform almost *any* physical activities—were not credited by Reliance Standard's own in-house nurse, House. When she reviewed the record, House discussed the same symptoms and conditions that other medical providers mentioned and that Norden relied on in terminating Smith's LTD benefits. House noted that bone scans revealed no "metastasis"; Smith was experiencing "low back pain and neck pain," fatigue, headaches, foot pain, shoulder pain, knee pain, joint pain, neuropathy in fingers and toes, trouble with dexterity in her hands, and severe arthralgias; had an ECOG score of 1; and had started trying yoga and walking. [DE 9-1 at 91]. She also noted Smith's continuing "chronic pain syndrome, fibromyalgia, and neuropathy" and that her pain was worsened by "prolonged sitting [and] standing" and that "pain is exacerbated with minimal activity." [*Id.*]. House's opinion made no mention of Kirkendoll's more exaggerated documentation of Smith's condition, and even noted that Smith's exams were "otherwise unremarkable," but still concluded that she was "precluded from engaging in *any* sustained work function." [*Id.* (emphasis added)].

This demonstrates that it was not necessary for Reliance Standard to credit the more exaggerated claims in Kirkendoll's documentation to find that Smith qualified as "Totally Disabled." House's conclusion tracked the rest of the medical record, which consistently demonstrated Smith was experiencing frequent, debilitating pain in multiple areas. Reliance Standard adopted this understanding—at least to the extent that it showed Smith could no longer perform the work functions of her role at Old National Bank—and approved Smith's LTD benefits

in April 2021, meaning she qualified as "Totally Disabled." The Court finds that this initial determination was supported by the record.

But when Norden summarized nearly identical data, he arrived at the opposite conclusion. [DE 9-3 at 217]. Reliance Standard changed its position—terminating Smith's LTD benefits in August 2021, mere months after approving them—and offered little to explain why it did so. *See Nord*, 538 U.S. at 834 ("Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence."); *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir. 2006) ("Generally speaking, a plan may not reject summarily the opinions of a treating physician, but must instead give reasons for adopting an alternative opinion.") (citation omitted). While there is no "rule that when a plan administrator suddenly changes course, the administrator must have new evidence of improvement," Reliance Standard was required to "have some reason for the change based on any number of factors." *McCollum v. Life Ins. Co. of N. Am.*, 495 F. App'x 694, 704 (6th Cir. 2012).[3] Reliance Standard points to no new or changed information from this visit with Kirkendoll that would suggest Smith no longer met the definition of "Total Disability."

Reliance Standard now claims "[t]here is absolutely no objective evidence within the record to support such a claim," despite having already approved LTD benefits for Smith on a nearly identical record to the one it used to terminate benefits. [DE 27 at 947]. Now, it contends that the entire record merely reflects Smith's "self-reported complaints" and that the "objective examination results were normal[.]" [DE 27 at 947]. If Reliance Standard doubted that Smith's ongoing pain was "objective," it had the power to have Smith examined. The policy provided that

---

[3] *McCollum* is an example of a case when a court applied *de novo* review but drew much of its reasoning and analysis from cases applying arbitrary and capricious review. *See, e.g.*, 495 F. App'x 694, 703–04 (citing *Kalish v. Liberty Mut./Liberty Life Assur. Co. of Bos.*, 419 F.3d 501, 507–08 (6th Cir. 2005) and *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296–97 (6th Cir. 2005)). In this case, the Court similarly analogizes to cases applying arbitrary and capricious review in conducting its *de novo* review of the record to explain its reasoning and analysis of the evidence.

Reliance Standard had "the right to have a Claimant interviewed and/or examined: (1) physically; (2) psychologically; and/or (3) psychiatrically; to determine the existence of any Total Disability which is the basis for a claim. This may be used as often as it is reasonably required while a claim is pending." [DE 9-1 at 45]. Reliance Standard tries to hold it against Smith that she "did not even attempt to support her claim with a functional capacity evaluation or similar objective proof," [DE 27 at 942], but Reliance Standard could have obtained such an evaluation at any point in processing her claim. *See Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005) ("[T]he failure to conduct a physical examination—especially where the right to do so is specifically reserved in the plan—may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination."); *Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 263–64 (6th Cir. 2006) (holding that the decision to rely on a file review and "not perform [an] examination supports the finding that [the administrator's] decision was arbitrary").

As Smith points out, pain is inherently subjective. *See, e.g., Shaw v. AT & T Umbrella Ben. Plan No. 1*, 795 F.3d 538, 550 (6th Cir. 2015) ("Because chronic pain is not easily subject to objective verification, the Plan's decision to conduct only a file review supports a finding that the decision-making was arbitrary and capricious."); *Bustetter v. Std. Ins. Co.*, 2019 U.S. Dist. LEXIS 163075, at *18 ("[W]hat is particularly troubling about Standard's review process in this case is that it relied on a non-examining physician's opinion to disregard [plaintiff's] subjective complaints of pain."); *Brainard v. Liberty Life Assurance Co.*, 173 F. Supp. 3d 482, 492 (E.D. Ky. 2016) (explaining a report was "conclusory and not well reasoned" that questioned "subjective complaints of pain without the benefit of a physical examination" when the plan "clearly allowed for a physical examination."). Because it is difficult to assess a subjective symptom such as pain, courts are often skeptical of dismissing them as subjective when treating physicians have credited

16

a patient's pain. *See Calvert*, 409 F.3d at 296–97 (discrediting a file-reviewer's conclusion that "claims of pain are *subjective exaggerations*" where he had never "met or examined Calvert" and did not have "a full understanding of Calvert's history" or "conduct[] a physical exam of Calvert") (emphasis in original). But that is exactly what Reliance Standard did.

The Court disagrees with Norden's explanation that "while there are multiple ongoing complaints, there is a lack of medical support to validate the level of symptoms that would preclude [Smith] from performing in a sedentary or light work functional capacity." [DE 9-3 at 217]. This language mirrors that of Sweeney's opinion almost exactly, suggesting that Norden rubber stamped it even though it conflicts with the rest of the record and Reliance Standard's own interpretation of the record only a few months earlier. The only new information that Norden purports to consider is the "Family Medicine" records from April 21, 2021 and the "oncology" records from May 17, 2021. [DE 9-3 at 217]. These records do not show that Smith's condition meaningfully changed. In fact, they reflect many of the same symptoms that Reliance Standard relied on in considering her "Totally Disabled" only months earlier. [*See* DE 9-8 at 521–22; DE 9-7 at 496, 499 ("Musculoskeletal: Positive for arthralgias and myalgias"; "Musculoskeletal: General: Tenderness present. Normal range of motion . . . Comments: tender to palpate cervical, upper thoracic, L/S spine.. [sic] point trigger point tenderness."; "Shoulder pain on the right side. Neuropathy – mainly in bilateral hands[.]"; "ECOG Performance status: 1")]. If anything, Kirdendoll's clinical notes are *less detailed*, but that does not warrant the conclusion that Smith's condition has markedly improved. The notes also indicate she is still taking medications and still experiencing side effects like "arthralgias." [DE 9-7 at 495]. While there were some promising signs reported, such as Smith "exercising 20–30 minutes 3 times per week," [*id.* at 496], these isolated details are not enough to conclude that Smith had gone from "Totally Disabled" to being

17

able to perform light work in a few short months. Nothing in Smith's medical records after her LTD benefits were approved affirmatively opined that her pain had lessened, her condition had improved, or that she could now perform light work. In contrast, multiple medical professionals concluded earlier in the record that Smith was experiencing pain that precluded her from doing her job.

The Court finds that Reliance Standard made the correct decision under the policy in its original determination that Smith qualified for LTD benefits in April 2021. There simply was not enough information in the subsequent clinical notes in August 2021 to demonstrate that Smith was now able to perform light work, as her role required. As a result, after reviewing the record *de novo*, the Court finds that Reliance Standard did not arrive at the "correct" decision when it terminated Smith's benefits. *Hoover*, 290 F.3d at 808–09.

Accordingly, the Court **GRANTS** judgment in favor of Smith, and retroactively reinstates her benefits[4] with prejudgment interest that will "simply compensate [Smith] for the lost interest value of money wrongly withheld[.]" *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000) (quoting *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 618 (6th Cir. 1998)). However, Smith is wrong that "[t]o determine the rate of interest, the Court is permitted to look to state law." [DE 23 at 617]; *see Rybarcyzk*, 235 F.3d at 985 ("Among the constraints on a district court's discretion to

---

[4] The Sixth Circuit has held this is the proper remedy, explaining:
> A plaintiff denied any benefits at all has no expectation of receiving them unless her claim is meritorious, and thus returning her to the status quo prior to the § 1133 violation requires only curing the procedural violation so that she may fairly pursue the merits of her claim. On the other hand, a plaintiff whose benefits have been terminated has, prior to the termination, a full expectation of continued disability payments until they are terminated by lawful procedures. Thus, "prior to the termination of her benefits by improper procedures, the status quo was that [the plaintiff] was receiving long-term disability benefits" and "the appropriate remedy is an order vacating the termination of her benefits and directing [the defendant] to reinstate retroactively the benefits."

*Wenner v. Sun Life Assur. Co. of Canada*, 482 F.3d 878, 883–84 (6th Cir. 2007) (quoting *Schneider v. Sentry Grp. Long Term Disability Plan*, 422 F.3d 621, 629–30 (7th Cir. 2005)).

18

shape an award of prejudgment interest in an ERISA case is the fact that we look with disfavor on simply adopting state law interest rates."). Instead, the Court finds that the "average 52-week United States Treasury bill rate for the relevant period" under 28 U.S.C. § 1961 is the appropriate method to calculate interest—one that the Sixth Circuit has upheld. *Id.* at 895–86. The Court will also **REMAND** the determination of the exact amount of benefits Smith is owed after retroactively reinstating benefits to Reliance Standard, consistent with the LTD policy and the amount Smith was previously receiving prior to Reliance Standard's termination of benefits. *See Kennard v. Means Indus., Inc.*, No. 18-2270, 2019 WL 11866725, at *1 (6th Cir. Apr. 2, 2019) (affirming district court's decision when it "awarded benefits to [plaintiff], but it returned the case to the plan administrator for a determination of the amount of benefits [plaintiff] was due").

### B. LWOP Benefits

Under Reliance Standard's policy, qualifying for LTD benefits did not automatically mean qualifying for LWOP benefits. While qualification for LTD benefits was "based on your Total Disability from your occupation," qualification for LWOP benefits was "based on your Total Disability from any occupation for which you are suited by education, training, or experience." [DE 9-2 at 200 (emphasis omitted)]. Because concluding Smith was not qualified for LTD benefits necessarily meant that she also did not qualify for LWOP benefits, Reliance Standard likely thought rendering a separate decision was redundant. Although the Court has reversed Reliance Standard's termination of LTD benefits, the record simply does not contain enough facts speaking to whether Smith is Totally Disabled from performing *any* job she was suited for. *See Elliot*, 473 F.3d at 622–23 (explaining that "[i]n this matter, we cannot say that [plaintiff] is clearly entitled to benefits" and "[remand] will allow for a proper determination of whether, in the first instance, [plaintiff] is entitled to [benefits]. We are not medical specialists and that judgment is not ours to

make."). For this reason, and because Reliance Standard never actually issued a determination on LWOP benefits, the Court will **REMAND** the decision on LWOP benefits to Reliance Standard consistent with this opinion.

## V.     Conclusion

For the reasons explained, and the Court being otherwise sufficiently advised, the Court **GRANTS** judgment in favor of Smith. Accordingly, the Court **REMANDS** to Reliance Standard (1) the determination of the exact amount of LTD benefits owed to Smith, consistent with this opinion, and (2) the determination as to whether Smith is qualified for LWOP benefits.

Smith also seeks "leave to file a separate motion addressing the amount of her attorneys' fees and costs." [DE 28 at 969; DE 23 at 617]. Because Smith has succeeded on the merits, the Court **GRANTS** Smith leave to brief her request for attorneys' fees and cost.

*[Signature]*
Rebecca Grady Jennings, District Judge
United States District Court

cc: counsel of record

February 13, 2024